# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 15-1011V
### Filed: October 10, 2017
Unpublished

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| AMRIT DHANOA, | * |
| | * |
| Petitioner, | * Ruling on Entitlement (Non-Table); Fact |
| v. | * Hearing; Findings of Fact; Influenza |
| | * ("Flu") Vaccine; Shoulder Injury Related |
| SECRETARY OF HEALTH | * to Vaccine Administration ("SIRVA"); |
| AND HUMAN SERVICES, | * Special Processing Unit ("SPU") |
| | * |
| Respondent. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA, for petitioner.*
*Ann Donohue Martin, U.S. Department of Justice, Washington, DC, for respondent.*


## RULING ON ENTITLEMENT[1]

**Dorsey**, Chief Special Master:

On September 11, 2015, Amrit Dhanoa ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury caused in fact by the influenza ("flu") vaccine she received on August 19, 2014. Petition at 1, ¶¶ 3, 14. Petitioner further alleges that she received the vaccine in the United States, suffered the residual effects of her injury for more than six months, and has not received any compensation for her injury, alleged as vaccine caused. *Id.* at ¶¶ 3, 14-16. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Procedural History

Along with her petition, petitioner filed medical records and a statement of completion.  *See* Exhibits 1-9 (ECF No. 1); Statement of Completion (ECF No. 2).  The initial status conference was held on October 26, 2015.  Maximillian Muller appeared on behalf of petitioner.  Ann Martin appeared for respondent.

At the conference, respondent's counsel indicated respondent had not identified any missing medical records but did have some concerns regarding the facts alleged in petitioner's claim.  *See* Order, issued Oct. 26, 2015 (ECF No. 13).  Respondent's counsel estimated respondent could file a Rule 4(c) report setting forth these concerns within 45 days.  *See id.*

On December 9, 2015, respondent filed his Rule 4(c) Report asserting that petitioner's request for entitlement to compensation under the Vaccine Act be denied. Respondent's Rule 4(c) at 1 (ECF No. 14).  Respondent argued that petitioner appeared to be advancing a SIRVA claim but had not provided "a preponderance of evidence demonstrating the requisite facts to establish compensation under a causation theory."  *Id.* at 5.  Specifically, respondent argued "there is no medical documentation demonstrating that petitioner received the flu vaccination in her right arm" and varying and conflicting evidence regarding the onset of petitioner's symptoms.  *Id.* at 5-6. Respondent also noted that at least some medical records appeared to be missing.  *Id.* at 3 n.1.  Respondent maintained that "the most contemporaneous medical documentation is inconsistent with a SIRVA claim."  *Id.* at 5.  In February 2017, petitioner filed additional medical records in an attempt to address respondent's concerns.  *See* Exhibits 10-12 (ECF Nos. 16-18).

The OSM staff attorney managing this SPU case held a status conference on March 29, 2016.  During the call, she informed the parties that the undersigned had reviewed the medical records and filings in this case and believed the case should settle. *See* Order, issued April 1, 2016 (ECF No. 21).  She told counsel the undersigned would like them to engage in settlement discussions before holding a Rule 5 status conference.  *See id.*

For the next two months, the parties engaged in settlement discussions.  After exchanging settlement amounts, they agreed they did not believe settlement was feasible and wished the case to "be placed on a litigation track."  Joint Status Report, filed May 26, 2016 (ECF No. 24).  The undersigned conducted a Rule 5 conference on June 30, 2016.  After hearing from the parties, the undersigned presented her tentative findings and conclusions.  Specifically, she found that petitioner received the influenza vaccine in her right (injured) arm, that the onset of petitioner's injury was immediate, that petitioner's failure to mention her shoulder pain to her primary care provider two days after vaccination and to her dermatologist on visits in August and December 2014 was reasonable, and that petitioner's clinical course and diagnosis is consistent with SIRVA.  Rule 5 Scheduling Order, issued July 5, 2016, at 2-3 (ECF No. 25).  The undersigned ordered the parties to file a joint status report within 30 days.  *Id.* at 3-4.

In their status report, the parties indicated they "have discussed this case in detail following the Rule 5 Conference and believe a fact hearing is necessary to reach a resolution." Joint Status Report, filed July 27, 2016 (ECF No. 26). The undersigned conducted a fact hearing in Dallas, Texas on December 8, 2016. During the hearing, it became clear that some medical records were outstanding. *See* Post-Hearing Order, issued Dec. 8, 2016, at 1 (ECF No. 31). The undersigned allowed petitioner thirty days to file the outstanding medical records. *Id.* at 2.

Petitioner filed the additional medical records on January 10, February 10, and February 22, 2017. (ECF Nos. 34, 37, 40). On March 20, 2017, the parties requested a written determination from the undersigned regarding several areas of disagreement: 1) the arm in which the vaccine was administered and 2) the onset of petitioner's injury. Joint Status Report (ECF No. 41). On April 19, 2017, the undersigned issued a fact ruling finding the vaccination was administered in petitioner's right arm as alleged and her onset occurred within 48 hours. (ECF No. 42). In her ruling, the undersigned included a detailed discussion of the evidence presented and the parties' respective arguments. She encouraged the parties to consider an informal resolution of the claim. *Id.* at 7.

On June 21, 2017, respondent filed a joint status report on behalf of the parties indicating he "conveyed a tentative offer of settlement to petitioner on June 12, 2017" and petitioner was considering the offer. (ECF No. 45). At a July 7, 2017 status conference with the staff attorney, petitioner's counsel indicated petitioner was considering respondent's settlement offer. *See* Order, issued July 7, 2017, at 1 (ECF No. 46). He further indicated petitioner could reach a decision and provide respondent with a response within 30 days. The parties confirmed that the main area of disagreement involved the appropriate amount for petitioner's pain and suffering in this case. *Id.* They discussed the options available if they could not informally resolve the case. *Id.* at 1-2.

On August 7, 2017, the parties filed a joint status report indicating "they are unable to resolve this case by settlement and request that the Chief Special Master issue a decision determining whether Petitioner is entitled to compensation." Joint Status Report at 1 (ECF No. 47). They added that "[i]f the Chief Special Master determines that Petitioner is entitled to compensation, the parties agree that efforts to resolve damages informally will not be productive . . . [and] therefore anticipate resolution of damages by decision of the Chief Special Master." *Id.*

## II.    Causation

Having resolved the pertinent factual issues, the undersigned finds petitioner has met all of the criteria for a SIRVA. As set forth in the April 19, 2017 fact ruling, the undersigned found petitioner suffered symptoms of SIRVA within 48 hours of receiving the August 19, 2014 influenza vaccine.

3

Although petitioner's claim was filed before SIRVA was added to the Vaccine Injury Table, and thus cannot be found to be a SIRVA Table injury,[3] the undersigned's findings were informed by the criteria used to evaluate such claims.[4] Petitioner has met her burden of proving causation-in-fact under *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005).

### III. Conclusion

**In view of the submitted evidence, including the medical records, credible witness testimony, and findings of fact, the undersigned finds petitioner entitled to Vaccine Act compensation.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master

---

[3] Originally, the effective date for the new rule was February 21, 2017. Revisions to the Vaccine Injury Table, 82 Fed. Reg. 6294 (Jan. 19, 2017) (to be codified at 42 C.F.R. pt. 100). This effective date was delayed until March 21, 2017. Delay of Revisions to the Vaccine Injury Table, 82 Fed. Reg. 11321 (Feb. 22, 2017) (to be codified at 42 C.F.R. pt. 100).

[4] The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

82 Fed. Reg. 6303 (Qualifications and Aids to Interpretation for SIRVA); *see also* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, 80 Fed. Reg. 45132, Notice of Proposed Rulemaking, July 29, 2015 (citing Atanasoff S, Ryan T, Lightfoot R, and Johann-Liang R, 2010, *Shoulder injury related to vaccine administration (SIRVA)*, Vaccine 28(51):8049-8052).